*915 On Application for a Rehearing.
Nicholls, O. J.
It would appear from an inspection of plaintiff’s petition that it contains two distinct demands presented in the alternative.
On averments by it deemed sufficient to carry with them the nullity of the ordinances authorizing the paving of St. Charles Avenue and everything done thereunder, plaintiff prayed that those ordinances and all said proceedings be decreed null and void; but anticipating a possible adverse decision upon this demand it set out allegations of a different character, and prayed that in the event the ordinances be held valid that then in that event the contract under the ordinance be awarded to it.
In refusing plaintiff’s accompanying prayer for an injunction the district judge assigned no special reasons, and we are left in doubt as to the grounds upon which he based his action.
The opinion which we have rendered in the case shows on its face that we passed by almost unnoticed the first branch of the petition and went directly to the c<. nsideration of the second. It was perfectly obvious to us that quoad the action for the declaration of the nullity of the ordinances the plaintiff had no standing in court.
The plaintiff described itself as a corporation organized under the laws of Mississippi and having its domicil at Vicksburg. It did not aver it was doing business in this State, that it had any agent here, that it had any property in New Orleans, or that it paid a dollar of taxes there, and it is quite likely that the judge of Division “ B,” finding no allegation tending to show any legal interest in the plaintiff such as to authorize him to invoke the nullity of the ordinance in question, refused the injunction for that reason. When this court reached (as it did reach) itself that conclusion — the effect of its doing so was of course to defeat that portion of plaintiff’s demand, independently of any question of tho sufficiency otherwise of plaintiff’s allegations as to the nullity of the ordinances. As throwing the plaintiff out of court on the score of want of legal interest in the question would leave still in court its allegations that the ordinances were null, the logical result in view of that fact would have authorized us (under the pleadings) to entirely do away with a discussion of the second branch of plaintiff’s petition. Be that as it may, we did in fact discuss it and held that the district judge acted correctly in refusing the injunction. In discussing the question we *916 took it up in the order and on the “ theory ” of plaintiff’s petition, that the first branch of the case had been examined into and passed upon adversely to plaintiff’s views, and that it was before us as one where the ordinances being assumed legal the rights of the parties were to be determined on other issues. In the very nature of things arising from a discussion from the new standpoint the court had to do away with every hypothesis and every allegation which had been urged or could have been urged on the first branch of the case and to deal with matters as being (up to the opening of the bids) in all respects legal. It was only on that point and from that point our discussion began on the hypothetical premises assumed, of perfect legality in all things prior to that time.
Taking up plaintiff’s pleadings and dealing with them as applicable to the second demand we reached the conclusion that it was impossible for the district judge to have ruled otherwise than he did. In the application for rehearing filed by the plaintiff it falls into the error of seeking to carry over and make available for the second or “contingent” prayer, allegations which for the purposes of that prayer have necessarily to disappear.
For the purposes of the second branch of the case we have to ‘‘assume ’’that the Rosetta Gravel Company, the Hoskins Gravel Company and the Gunning Gravel Company were each and all fairly allowed to enter into free competition with each other for the paving contract under a valid ordinance, but that the Gunning Gravel Company’s bid was the lowest bid of the three, and yet in spite of that fact and its ability to furnish all necessary security the City Council awarded the coutract to the Rosetta Gravel Company and that the Mayor would sign the contract under orders from the council unless restrained by injunction. It was upon this state and condition of the pleadings and nothing more that we were called upon to say “ on the face of the papers’’ whether the district judge was wrong in refusing the injunction.
The opinion which we have rendered was from that point of view.
Only a few days since in the case of Hughes vs. Murdock we cited the well recognized doctrine in pleading that up to judgment the pleadings will be taken most strongly against the pleader, and that unknown, unrecited facts would not be assumed in his favor, particularly in the face of an adverse ruling of the district judge.
The case at bar falls directly under that principle. The plaintiff *917 asks us to “assume,” as an absolutely necessary consequence of its being the lowest bidder for the contract, that it should be awarded to it, and it asks us to assume that fact in presence of the repeated declarations of courts everywhere, that sworn officers will be presumed to have done their duty, certainly at least until they have been “alleged” to have done otherwise.
There is not one single word in plaintiff’s petition accusing the Common Council of New Orleans with having acted arbitrarily, fraudulently or improperly in any manner.
The plaintiff relies upon the naked fact advanced by it, that its bid was the lowest, and that its material was equal or superior to that of the other bidders, and that it could furnish security. We are left absolutely in the dark as to the reasons upon which the Council acted.
We are bound in the absence of direct charges and statements of facts to presume that their action was honest and legal.
We can not eke out a case for the plaintiff by inferences of wrongdoing and make suspicions and conjectures take the place of allegations.
Whilst it is possible there was such wrong- doing, it might also well be that the Council acted after a very strict examination into all the facts and circumstances which it had the legal right to examine into in order to determine whether plaintiff’s bid was a proper one or not, and that these conclusions thereon are justified and right.
It may well be that although the plaintiff “alleges” his ability to furnish security he may in fact never have tendered it at all, or that the security furnished was insufficient. Plaintiff’s petition is silent on these points.
If the Council was guilty of wrong-doing plaintiff should have directly so alleged, and stated facts and circumstances to show in what way and from what cause that wrong-doing arose.
We repeat here what we said in the Hughes case, that when a plaintiff selects an act as the object of his attack which is not per se necessarily wrongful and illegal, but which may exist consistently with honesty, fair dealing and legality, it is the duty of the attacking party to set out specifically the facts which would give to the act an illegal or wrongful character.
Whatever expressions were used in our opinion to the effect that the Council had acted prudently and rightly must be read and construed from the standpoint and from the circumstances under which they *918 were employed. We did not intend to say as a, fact that the Council had so acted, but that for the purposes exclusively of this ease as presently placed before us, we were bound to assume they had done so.
The fear which plaintiff entertains that we have committed ourselves to holding that an arbitrary selection by a common council of three or four favored individuals to whom and to no others it would extend invitations to give in bids for contracts, or to a selection of gravel at any particular point or locality, under circumstances such as to make the bids in reality, but under disguised pretexts, nothing more or less than the bids of the particular persons owning the same, or that we have recognized and given our sanction to the doctrine that a common council under a grant to accept or reject bids has the right to arbitrarily and finally reject the lowest bid or to accept the higher, without any facts justifying such -action, is totally unfounded.
There is high authority for holding to the contrary.
In the case of People ex rel. Coughlin vs. Gleason, 25 Northeastern Rep. 5, the Court of Appeals of the State of New York said:
“The claim is made on behalf of the relator that there is a conclusive presumption that the common council adjudicated that his bid was that of the lowest responsible bidder.
“If this claim is well founded, then provisions like that above quoted (providing that contracts should be let to the lowest bidder) from the city charter are of little use and they can always be effectually disregarded and violated.
“It is true that the common council, where there are several bidders, have jurisdiction to determine who is the lowest responsible bidder, but, in order to give its action any legal effect, it must exercise its jurisdiction and make a determination based upon some facts. If it refuses to accept the lowest bidder for work or supplies, there must be some facts tending to show that it is not that of a responsible bidder, or there must be at least some pretence to that effect. An arbitrary determination by such a body to accept the highest bidder without any facts justifying it can not have the effect of a judicial determination and must be denounced as a palpable violation of law.”
It was doubtless the intention of the plaintiff to bring this case -. within the doctrine just' announced, but it has not done so in its pleadings and it is by these that we are now testing matters.
Rehearing refused.